UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GP ASSET HOLDINGS, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>ROSSLAW, PLLC and MATTHEW E. ROSS,<br><br>          Defendants. | Case No.: 23-CV-2360 TWR (KSC)<br><br>**ORDER DENYING PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br><br>(ECF No. 5) |

   Presently before the Court are Plaintiff GP Asset Holdings, LLC's Complaint and Jury Demand ("Compl.," ECF No. 1) and Application for a Temporary Restraining Order ("TRO") and Order to Show Cause Regarding Preliminary Injunction ("TRO App.," ECF No. 5), to which Defendants RossLaw PLLC and Matthew E. Ross have filed an Opposition (ECF Nos. 7 ("Opp'n") & 8 ("Ross Decl.")) and in support of which Plaintiff has filed a Reply (ECF No. 11). Through its TRO Application, Plaintiff seeks "a temporary restraining order and preliminary injunction requiring Defendants to turn over [a] surety to GP Asset Holdings within (1) business day so that GP Asset Holdings can deposit it before it expires on January 11, 2024, after which GP Asset Holdings, within three (3) business days of receipt and clearing of the funds from the surety, will deposit with the Court either the funds it obtained from the surety or a bond for the equivalent amount . . . pending resolution of the parties' dispute." (*See* TRO App. at 1.) The Court held a hearing on

1

January 9, 2024.  (*See* ECF No. 16.)  Having carefully considered the record, the Parties' arguments, and the relevant law, the Court **DENIES** Plaintiff's TRO Application.

## BACKGROUND

Although the Parties are well aware of the underlying facts, the Court provides a brief overview of the underlying dispute:

In January 2023, non-party SC Endowment, Ltd. offered to facilitate an investment of $111,500,000 in Plaintiff through a bond offering.  (*See* Compl. ¶¶ 3, 9–11; ECF No. 1-2 ("Ex. A").)  The primary obligor was to be non-party TC Advantage Traders, Ltd. ("TCAT"), an affiliate of SC Endowment.  (*See* Ex. A.)  Plaintiff was required to put down 4%, or $4,240,000 less applicable fees, as a refundable down payment to help SC Endowment cover the costs of creating and selling the bond.  (*See* Compl. ¶¶ 3–4, 12–13; Ex. A.)  Plaintiff took out a line of credit to pay the refundable down payment and has paid over $300,000 in interest to date.  (*See* Compl. ¶ 34.)  The deposit was to be secured by a private surety in the amount of €4,500,000 from Banco BBVA Spain and held in RossLaw's escrow account for payment to Plaintiff in the event the transaction did not close in 120 days.  (*Id.* ¶¶ 3, 12–15, 18–19; Ex. A.)

On January 9, 2023, Plaintiff and SC Endowment signed a Letter of Commitment, (*see* Compl. ¶ 22; ECF No. 1-4 ("Ex. C")), and Plaintiff, Defendants, and SC Endowment entered into an Escrow Agreement.  (*See* Compl. ¶ 22; ECF No. 1-3 ("Ex. B").)  Under the Escrow Agreement, the down payment was to be disbursed from RossLaw's escrow account to SC Endowment only when RossLaw had attested to Plaintiff by email that he had received: (1) the Banco BBVA Spain pay order; (2) a Notice of Readiness email from Kendall Knowles, attorney for TCAT; and (3) an invoice from SC Endowment.  (*See* Compl. ¶¶ 20, 28–30; Ex. B § 1.3(B).)  Defendants disbursed the escrowed deposit on January 17, 2023, (*see* Compl. ¶¶ 35–36; ECF No. 1-5 ("Ex. D")), although Plaintiff now contends that Defendants failed to provide Plaintiff with copies of any of the requisite underlying documents.  (*See* Compl. ¶¶ 37–38.)

///

On April 8, 2023, Plaintiff's then-CEO Stacey Iyer signed a "Declaration/Statement of Services Rendered" acknowledging that SC Endowment "ha[d] created or caused to be created a Corporate [Medium Term Note] 144A CUSIP 87225H AC2, 144A ISIN US 87225HAC25." (*See* Ross Decl. ¶ 17; ECF No. 8-5 ("Ex. 5").) The Parties dispute whether this terminated Plaintiff's right to the surety under Section 1.3(D) of the Escrow Agreement. (*Compare* TRO App. at 13–14, *with* Opp'n at 8–9.) Meanwhile, the initial 120-day deadline for the transaction to close, *i.e.*, early May 2023, passed. (*See* Compl. ¶ 39.) On June 15, 2023, Plaintiff and SC Endowment executed an Amended Letter of Commitment, still dated January 23, 2023, with SC Endowment now agreeing to use its best efforts to invest $505,500,000 in GP Asset Holdings. (*See id.* ¶¶ 43–44; ECF No. 1-6 ("Ex. E").) That transaction would similarly be terminated unless closed within 120 days of Plaintiff executing the Amended Letter of Commitment. (*See* Compl. ¶ 44; Ex. E.)

On October 3, 2023, as the second 120-day deadline from the signing of the Amended Letter of Commitment approached, Plaintiff's counsel made a formal demand for proof of the surety from Defendants. (*See* Compl. ¶ 47.) On October 20, 2023, Mr. Ross sent a photo of the surety to Plaintiff. (*See id.* ¶ 48.) The photo revealed that the surety is from Sabadell, a different Spanish bank, and expires January 11, 2024. (*See id.* ¶¶ 50–51.) The Parties dispute whether Plaintiff had foreknowledge of the substitution of Sabadell for Banco BBVA. (*Compare* TRO App. at 12, *with* Opp'n at 8.) To the Court's knowledge, as of the date of this Order, Defendants continue to hold the surety and are subject to competing claims from Plaintiff and SC Endowment. (*See* Ross Decl. ¶ 26.)

On December 28, 2023, Plaintiff filed a Complaint alleging three causes of action for (1) breach of contract against RossLaw, (2) breach of fiduciary duty against RossLaw and Mr. Ross, and (3) injunctive relief against RossLaw and Mr. Ross. (*See generally* ECF No. 1.) The following day, Plaintiff filed the instant TRO Application, (*see generally* ECF No. 5), which Defendants opposed on January 2, 2024. (*See generally* ECF Nos. 7 & 8.) On January 3, 2024, Plaintiff filed its reply, and the Court ordered Plaintiff to show cause why this action should not be transferred to the United States District Court for the Central

District of California, Southern Division, pursuant to 28 U.S.C. §§ 84(c)(3), 1391(b), and 1406(a).  (*See generally* ECF No. 12 ("OSC").)  Upon receipt of Plaintiff's response, (*see* ECF No. 13), the Court vacated its January 3, 2024 Order to Show Cause, (*see* ECF No. 14), and set the TRO Application for a hearing on January 9, 2024.  (*See* ECF No. 15.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes a trial judge to grant a temporary restraining order under certain circumstances "to preserve the status quo and the rights of the parties until a final judgment issues in the cause."  *See Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (quoting *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)).  "A preliminary injunction [or temporary restraining order] . . . is not a preliminary adjudication on the merits[,] but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment."  *Id.* (alteration in original) (quoting *Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)).  The status quo in this context "refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy[.]'"  *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."  *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  "A party seeking a preliminary injunction must meet one of two variants of the same standard."  *Ramos*, 975 F.3d at 887 (quoting *All. for Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017)).

> Under the original standard, plaintiffs seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.

*Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  "The Ninth Circuit employs an alternative 'serious questions' standard, also known as the 'sliding scale'

variant of the *Winter* standard." *Id.* (citing *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011)).

> Under this alternate standard, [the court] weigh[s] the preliminary injunction factors on a sliding scale, such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits—a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied.

*Id.* at 887–88 (internal quotation marks omitted) (quoting *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018)).  In other words, "[a] preliminary injunction may be granted . . . where the moving party demonstrates either '(1) a combination of probable success on the merits *and* the possibility of irreparable injury *or* (2) the existence of serious questions going to the merits *and* that the balance of hardships tips sharply in [its] favor.'" *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (emphasis and second alteration in original) (quoting *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985)).

This standard is "doubly demanding" when the movant seeks a mandatory injunction, *i.e.*, an injunction that "orders a responsible party to take action." *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (internal quotation marks omitted) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH*, 571 F.3d 873, 879 (9th Cir. 2009)).  This is because "a mandatory injunction 'goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored.'" *Id.* (alteration and emphasis in original) (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)).  Accordingly, "[t]he district court should deny such relief unless the facts and law clearly favor the moving party." *Id.* (internal quotation marks omitted) (quoting *Stanley*, 13 F.3d at 1320).  "In plain terms, mandatory injunctions should not issue in 'doubtful cases.'" *Id.* (quoting *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011).

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Consequently, there are several limitations on when "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney," *see* Fed. R. Civ. P. 65(b), and "[t]he court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." *See* Fed. R. Civ. P. 65(c).  Further, "every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). Whether to "grant . . . a preliminary injunction is a matter committed to the discretion of the trial judge[,]" and that decision will be "reverse[d] only if that discretion is abused or the decision is based on an erroneous legal standard or clearly erroneous findings of fact." *See Sierra On-Line*, 739 F.2d at 1421.

## ANALYSIS

Through the present TRO Application, Plaintiff seeks "a temporary restraining order and preliminary injunction requiring Defendants to turn over the surety to GP Asset Holdings within (1) business day so that GP Asset Holdings can deposit it before it expires on January 11, 2024, after which GP Asset Holdings, within three (3) business days of receipt and clearing of the funds from the surety, will deposit with the Court either the funds it obtained from the surety or a bond for the equivalent amount . . . pending resolution of the parties' dispute." (*See* TRO App. at 1.)  Plaintiff bears the burden of establishing that it is entitled to relief, and that burden is "doubly demanding" if Plaintiff is seeking a mandatory injunction. *See Garcia*, 786 F.3d at 740.  As in *Qualcomm Inc. v. Compal Elecs., Inc.*, 283 F. Supp. 3d 905 (S.D. Cal. 2017), the Parties dispute whether Plaintiff's

requested relief amounts to a mandatory or prohibitory injunction. *See id.* at 914. Although the answer "depends upon what the Court construes as the status quo" and is "no straightforward task," however, "[t]he Court . . . need not settle this disagreement because [Plaintiff]'s request for a preliminary injunction fails even under the less demanding, traditional preliminary injunction standard articulated in *Winter*." *See id.*

Plaintiff contends that the irreparable injury it will suffer in the absence of injunctive relief is the loss of the enforcement of its bargained-for collateral provision. (*See* TRO App. at 17–18, 24–27; Reply at 9.) Plaintiff, however, relies solely on out-of-Circuit cases that are not binding on this Court.[1] As one district judge within this Circuit noted, "[s]ome district courts have indeed found that loss of collateralization . . . constitutes irreparable harm adequate to support issuance of a preliminary injunction or TRO." *Hudson Ins. Co. v. Simmons Const., LLC*, No. CV-12-407-PHX-GMS, 2012 WL 869383, at *4 (D. Ariz. Mar. 14, 2012). "Usually, such courts" rely on the possible "dissipat[ion of] assets[]" or the loss of the "bargained-for status as secured creditor." *See id.* (citing cases from the Western District of North Carolina and Middle District of Georgia). But "[n]either the Ninth Circuit itself nor the District Courts within the Ninth Circuit have been swayed by these arguments." *See id.* (citing *Hanover Ins. Co. v. TLC Investing, LLC*, No. 11-CV-711 (JCM) 2011 WL 3841299, at *1 (D. Nev. Aug. 26, 2011)). In any event, Plaintiff introduces no evidence that it is unlikely to recover its refundable deposit following the expiration of the surety. *Cf.* TRO App. at 27 (citing *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009), for the proposition that "'a likelihood that defendants will not have the resources to reimburse' the plaintiff weighs in favor of a finding of irreparable harm"). Ultimately, "the Court declines to conclude that the mere fact that [SC Endowment and TCAT] are foreign entities, and that it may theoretically be difficult to enforce a judgment,

---

[1] The only in-Circuit authority Plaintiff cites, *JP Express Service, Inc. v. KG Administrative Services*, No. SACV 18-00134-CJC(RAOx), 2018 WL 3815046 (C.D. Cal. July 2, 2018), did not involve collateral, but rather the "loss of 'a unique contract right,'" *i.e.*, discounted rates with a health insurance company in the midst of an ERISA dispute. *See id.* at *7.

are reasons alone to find that [Plaintiff] is likely to face irreparable harm." *See Qualcomm*, 283 F. Supp. 3d at 923.

Given the absence of any evidence that Plaintiff will be unable to recoup its deposit following the expiration of the surety; Plaintiff's explicit acceptance of a surety that would "be valid for a period of three hundred sixty (360) days)," (*see, e.g.*, Ex. C at 4); and Plaintiff's delay in seeking relief since October 20, 2023, (*see, e.g.*, Compl. ¶ 48), the Court is unable to conclude that Plaintiff has met its burden of establishing irreparable harm such that it is entitled to a TRO. *See Qualcomm*, 283 F. Supp. 3d at 914–15 ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. For this reason, 'monetary injury is not normally considered irreparable' in the context of a preliminary injunction." (first quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974); then quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)); *see also, e.g.*, *W. Surety Co. v. PASI of LA, Inc.*, 334 F. Supp. 3d 764, 795 (M.D. La. 2018) (collecting cases) ("Courts granting preliminary injunctive relief under Federal Rule of Civil Procedure 65 generally require some showing of irreparable harm such as evidence that establishes that the indemnitor is in dire financial straits, no longer has a traditional source of credit, has been dishonest or 'is millions of dollars in the hole with various creditors.'"). Because Plaintiff fails to demonstrate that it is likely to suffer irreparable harm absent preliminary injunctive relief, the Court need not wade into the hotly contested facts and interpretations of underlying documents that form the basis of Plaintiff's claims. *See, e.g.*, *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011); *see also, e.g.*, *All. for the Wild Rockies v. U.S. Forest Serv.*, No. 1:15-CV-00193-EJL, 2016 WL 3349221, at *3 (D. Idaho June 14, 2016) ("Where a plaintiff fails to demonstrate a likelihood of irreparable harm in the absence of preliminary relief, the court need not address the remaining elements of the preliminary injunction standard." (quoting *Ctr. for Food Safety*, 636 F.3d at 1174)).

## CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiff's TRO Application (ECF No. 5).

**IT IS SO ORDERED.**

Dated: January 9, 2024

_____
Honorable Todd W. Robinson
United States District Judge